# 23-0076-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————————

TERRENCE REYNOLDS,

*Plaintiff-Appellant,*

— v. —

CITY OF NEW YORK,

*Defendant-Appellee.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

GEOFFREY T. MOTT
LAW OFFICES OF GEOFFREY T. MOTT, P.C.
*Attorneys for Plaintiff-Appellant*
7600 Jericho Turnpike, Suite 105
Woodbury, New York 11797
(516) 544-4600

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

JURISDICTION ............................................................................... 1

STATEMENT OF THE CASE ............................................................ 1

STATEMENT OF FACTS ................................................................. 2

PROCEDURAL HISTORY ............................................................... 9

QUESTIONS PRESENTED .............................................................. 11

SUMMARY OF ARGUMENT ........................................................... 12

STANDARD OF REVIEW ................................................................ 12

ARGUMENT .................................................................................. 14

    POINT I

    Plaintiff sets forth a *Prima Facie* case for Retaliation for Protected
    Speech pursuant to the First Amendment of the Constitution of the
    United States of America ............................................................. 14

    A.    Plaintiff's Speech is Protected by the First Amendment .................... 14

    B.    Plaintiff's Speech was a Matter of Public Concern .......................... 20

CONCLUSION ............................................................................... 26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Agosto v. N.Y.C. Dep't of Educ.*,
   982 F.3d 86 (2d Cir. 2020) ...................................................................15

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) .................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................13

*Brown v. Off. of State Comptroller*,
   456 F. Supp. 3d 370 (D. Conn. 2020)...................................................15

*Connick v. Myers*,
   461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) ....................21

*Cotarelo v. Village of Sleepy Hollow Police Dept*,
   460 F.3d 247 (2d Cir. 2006) .................................................................24

*Drimal v. Tai*,
   786 F.3d 219 (2d Cir. 2015) .................................................................13

*Garcetti v. Ceballos*,
   547 U.S. 410, 126 S. Ct. 1951 (2006).......................................... 14, 17

*Golodner v. Berliner*,
   770 F.3d 196 (2d Cir. 2014) ........................................................ 15, 22

*Gorman v. Rensselaer Cnty.*,
   910 F.3d 40 (2d Cir. 2018) ...................................................................24

*Huth v. Haslun*,
   598 F.3d 70 (2d Cir. 2010) ...................................................................22

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) .................................................................13

*Lane v. Franks*,
   573 U.S. 228, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014) ...... 21, 22, 24

*Lewis v. Cowen*,
    165 F.3d 154 (2d Cir. 1999) ...............................................................24

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020) .................................................................13

*Matthews v. City of New York,*
    779 F.3d 167 (2d Cir. 2015) ....................................................... *passim*

*Montero v. City of Yonkers,*
    890 F.3d 386 (2d Cir. 2018) ......................................................... 14, 24

*Reuland v. Hynes*,
    460 F.3d 409 (2d Cir. 2006) ...............................................................22

*Reynolds v. City of New York*,
    No. 22-CV-1910 (VEC), 2022 WL 17792394
    (S.D.N.Y. Dec. 19, 2022) ......................................................................2

*Ross v. Breslin*,
    693 F.3d 300 (2d Cir. 2012) ......................................................... 15, 19

*Roth v. United States*,
    354 U.S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957) ......................21

*Ruston v. Town Board for the Town of Skaneateles*,
    610 F.3d 55 (2d Cir. 2010) .................................................................12

*San Diego v. Roe*,
    543 U.S. 77, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004) ......................22

*Shara v. Maine-Endwell Cent. Sch. Dist.*,
    46 F.4th 77 (2d Cir. 2022) ...................................................... 15, 18, 19

*Sousa v. Roque*,
    578 F.3d 164 (2d Cir. 2009) .................................................. 20, 21, 22

*Specht v. City of New York*,
    15 F.4th 594 (2d Cir. 2021) .................................................. 14, 15, 24

*Waters v. Churchill*,
    511 U.S. 661, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994) ..................21

*Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*,
    593 F.3d 196 (2d Cir. 2010) ........................................................ 15, 17

iii

**Statutes & Other Authorities:**

U.S. Const., Amend. I ................................................................. *passim*

28 U.S.C. § 1291 ................................................................................1

42 U.S.C. § 1983 .................................................................... 1, 9, 11

Fed. R. Civ. P. 12(b)(6)...................................................................13

## JURISDICTION

As Plaintiff-Appellant Terrence Reynolds (herein "Plaintiff") filed this action pursuant to § 1983 to redress a violation of Plaintiff's rights under the First Amendment of the Constitution of the United State of America, the District Court had subject matter jurisdiction over the herein case. On December 19, 2022, the Honorable Valerie Caproni granted the Motion to dismiss of Defendant-Appellee City of New York (herein "Defendant City") in the underlying matter, *Terrence Reynolds v. The City of New York*, Docket No.: 22-CV-1910 (VEC). (**JA 287-295**). On December 20, 2022, the District Court entered the final judgment on all federal claims, granting Defendant City's Motion to dismiss. (**JA 296**). As Plaintiff-Appellant timely filed a Notice of Appeal on January 17, 2023 (**JA 297**), this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

Plaintiff, a former sewage treatment worker at Defendant's Department of Environmental Protection (herein "DEP"), was employed at the Ward Island Sewage Treatment Facility. Plaintiff asserts that he was retaliated against for exercising his First Amendment Right to free speech by reporting public health and safety concerns including but not limited to: 1) drug dealing at the work-site, which is public property; 2) intoxication on the job; 3) fraudulent signing of paperwork concerning chemical deliveries; and 4) theft of personal protective equipment. The Ward Island

1

Sewage Treatment Facility is responsible for insuring clean drinking water to the public and the reduction of hazardous pollutants within the environment. Plaintiff suffered a series of adverse retaliatory actions including but not limited to: 1) a physical assault; 2) alteration of shift resulting in reduction in pay; and 3) a series of wrongful disciplinary actions that ultimately resulted in the termination of Plaintiff's seventeen year career with Defendant. The District Court (Caproni, V.E.) held that Plaintiff had not previously litigated his First Amendment retaliation claim in the proceeding before OATH. However the District Court also held that Plaintiff failed to allege adequately that he spoke as a citizen on a matter of public concern as opposed to speaking as an employee about improper workplace conduct. Plaintiff appeals from the District Court's ruling reported at *Reynolds v. City of New York*, No. 22-CV-1910 (VEC), 2022 WL 17792394 (S.D.N.Y. Dec. 19, 2022).

## STATEMENT OF FACTS

In or about 2004, Plaintiff was hired as a sewage treatment worker by Defendant City's Department of Environmental Protection (herein "DEP") as a sewage treatment worker. (**JA 37 ¶6**) Plaintiff worked the night shift at the DEP's sewage treatment facility on Ward Island for seventeen years without being subjected to any discipline or being involved in any adverse incidents. (**JA 37 ¶6, 38 ¶13**). It was not until Plaintiff made complaints to his supervisors at Defendant City's EEO and reported an assault by his coworker, Michael Parente (herein "Parente"), to the

2

New York Police Department (**JA 20**; **87** Ln:4-16; **255**), that Plaintiff's work schedule was altered, resulting in less pay and Defendant's DEP commenced a campaign of wrongful disciplinary actions that resulted in Plaintiff's unjustified and wrongful termination. (**JA 37-40**). Throughout his employment, Plaintiff was qualified to perform his job and performed the essential functions of his job in a satisfactory manner. (**JA 37 ¶6, 38 ¶13**).

The purpose and function of the Ward's Island Sewage Treatment Facility is to ensure that clean drinking water is supplied to the public and to reduce hazardous materials pollution within the environment. The work at DEP required the safe handling of toxic and dangerous chemicals. (**JA 37 ¶6, 38 ¶13**). As such, DEP serves as a governmental department whose sole purpose is to protect and ensure public health and safety. (*Id.*)

During the course of his employment at DEP, Plaintiff became an outspoken critic of conduct that took place at Ward's Island that was illegal and amounted to public health and safety concerns. Plaintiff's speech, in this regard, was not part of his job duties and responsibilities, but rather was expressed as a citizen who was concerned about the impact that conduct at DEP could have on public health, considering the nature and function of DEP in relation to the supply of clean drinking water and the handling of toxic and dangerous chemicals. (**JA 37-38**).

For example, in violation of OSHA, many of the employees at Ward's Island,

including coworker, Parente consumed alcohol on the job site, to the point of obvious intoxication and working in said altered state, thereby impeding their ability to adequately perform their job, which is an essential function to maintain public health. (**JA 37-38**). Moreover, Plaintiff reported, among other things, illegalities occurring at Ward's Island, including but not limited to: 1) drug dealing; 2) fraudulent signing of paperwork concerning chemical deliveries; and 3) theft of personal protective equipment (herein "PPE") supplies. (**JA 38 ¶10**). Again, these actions presented a clear potential risk to the health and safety of the public via the shear nature of the work at the Ward Island Sewage Treatment Facility, namely ensuring clean drinking water for the public and limiting the amount of dangerous and toxic chemical in the environment. (**JA 37-38**).

As a sewage treatment worker, Plaintiff's reporting of the aforementioned issues was neither within the scope of Plaintiff's job duties, nor did it provide Plaintiff any personal benefit. Rather, Plaintiff's reporting of the aforementioned conduct resulted in a campaign of retaliation and harassment against Plaintiff by Defendant through its employees and supervisors, as a direct result of Plaintiff's speech regarding the dangerous incidents and activities at the Ward's Island Sewage Treatment Facility. (**JA 38-39**). Plaintiff's reporting of said illegalities was not deterred by Defendant's retaliation. Plaintiff put the safety of the community relating to concerns for safe drinking water and exposure to toxic and dangerous

4

chemicals and pollutants above his own personal concerns for his job, safety and being subjected to harassment. (**JA 38-40**). Plaintiff's speech was specifically targeted to uncover wrongdoing and breaches of public trust that potentially impacted public health at Defendant's DEP facility. (**JA 38 ¶¶8-9, 39¶10**).

In or around early 2020, Plaintiff reported the series of illegal and worrisome incidents and conduct, discussed *supra*, to supervisors, including Gerould McCoy (herein "McCoy") and Haman (first name unknown) (herein "Haman"), in addition to the Defendant City' Equal Employment Opportunity office (herein "EEO"). (**JA 38 ¶12**). Prior to reporting the malfeasance of Defendant's employees, and dangerous incidents and conduct, Plaintiff had been subjected to minimal or no disciplinary action and had minimal or no adverse interpersonal issues with coworkers. (**JA 39-40**).

Furthermore, in or around March 2020, Plaintiff's coworkers and supervisors engineered a concerted retaliatory attack against Plaintiff based on their knowledge that Plaintiff had "blown the whistle" regarding employee malfeasance, illegal conduct, and health and safety issues that were taking place at Defendant's Ward's Island Sewage Treatment Facility. (**JA 38 ¶14**; *See also supra*). The timing of these retaliatory attacks and sudden negative treatment of Plaintiff were temporally related to and a byproduct of Plaintiff engaging in the aforementioned protected speech. (**JA 38-40**).

In addition to constant hostility, false accusations of wrongdoing, and threats

of reprisal, Plaintiff was also transferred to the day shift, after having worked seventeen (17) years on the night shift, causing Plaintiff to incur a significant reduction in available overtime hours and a loss of the night-time wage differential. (**JA 39 ¶15**). As a result, Plaintiff's income was significantly reduced.

Moreover, on May 28, 2020, said harassment culminated in physical violence. Plaintiff was physically assaulted by Parente, in retaliation for Plaintiff reporting Parente's continuous intoxication on the job. (**JA 39 ¶¶15-18**). Said assault was so significant that it caused Plaintiff to sustain bruising, swelling, and shoulder nerve pain radiating to Plaintiff's fingers, which required Plaintiff to obtain medical treatment thereafter, and which has yet to cease. (**JA 39 ¶16, 40 ¶¶21-22**). Parente's assault on Plaintiff was a direct result of Plaintiff's speech regarding Parente's continuous intoxication while on the job at Defendant's Ward's Island Sewage Treatment Facility. Parente's intoxication was of public concern as the purpose of said Treatment Facility was and continues to be, providing clean water to the public and protection from toxic and dangerous chemicals and pollutants. (**JA 37 ¶¶7-9, 38 ¶¶10-14, 40 ¶21**).

Despite Defendant being aware of the physical assault by Parente[1] and in the

---

[1] Notably, Parente was arrested by the NYPD, criminal charges were filed and a criminal prosecution ensued. (**JA 20, 87**, Ln:4-16, **255**) Defendant was aware that a restraining order was issued and the NYPD came to the Ward's Island Treatment Facility attempting to arrest Parente. DEP supervisors moved Parente to another location to try to frustrate Parente's arrest. Parante is a violent offender who was

issues Plaintiff raised regarding said health and safety risks to the community, Defendant, and its agents, further retaliated against Plaintiff. (**JA 39 ¶¶16-19**). Said retaliation included, but was not limited to, subjecting Plaintiff to contrived written discipline based on false accusations and by goading Plaintiff into a verbal altercation and then documenting same in an effort to create a paper trail to justify Plaintiff's termination after seventeen years of employment with Defendant. (**JA 38-40**). Said deceitful actions by Defendant were squarely based on Plaintiff's whistleblowing activity, in an effort to silence Plaintiff for his protected speech regarding the danger to the community's need for a supply of safe and clean drinking water, the potential exposure to dangerous chemicals, as well as the well-known ills of drug trafficking. (**JA 37-40**).

As a byproduct of said retaliation, on or about November 12, 2021, Plaintiff was terminated after a hearing was held whereat numerous witnesses presented false and untrue testimony as part and parcel of the aforementioned collusion of Defendant's employees and supervisors. (**JA 39 ¶18**). But for the exercise of Plaintiff's First Amendment speech regarding the health and safety risks to the community at large, discussed *supra*, these contrived charges and the false allegations upon which they were based, would not have been fabricated and

---

previously convicted of manslaughter in the first degree and was incarcerated for six years prior to his employment with Defendant. (*See* https://nysdoccslookup.doccs.ny.gov/).

presented as a basis to terminate Plaintiff's longstanding career with Defendant.

Moreover, the hearing before OATH did not present Plaintiff with a full and fair opportunity to litigate Plaintiff's First Amendment retaliation claim, as determined by the District Court. (*See* **JA 287-295**). Specifically, Plaintiff did not have the same rights and opportunities to pre-hearing discovery and depositions as Plaintiff would have in federal court. Furthermore, the hearing officer at the OATH hearing was not charged with, nor had jurisdiction to, determine whether Plaintiff engaged in First Amendment protected speech and was subjected to retaliation for expressing same. (**JA 39 ¶18, 287-295**). The hearing officer's determination was also negatively impacted by the fact that numerous employees of Defendant's DEP engaged in retaliatory conduct toward Plaintiff due to Plaintiff's speech and banded together to submit false narratives about Plaintiff and his conduct. (**JA 39 ¶¶18, 40**).

Ultimately, Defendant and its agents engaged in a campaign of continual harassment of Plaintiff in an effort to provoke a negative reaction from Plaintiff for the purpose of creating a pretext to terminate Plaintiff's employment. Said actions were contrived against Plaintiff in retaliation for his expression of protected speech and reporting of illegal activities that were occurring at DEP which created potential harm to the public health and safety. Said conduct was engaged in and condoned by Defendant's supervisors and policymakers at the DEP. (**JA 40¶21**).

## PROCEDURAL HISTORY

Plaintiff filed this action on March 7, 2022, asserting that Defendant retaliated against Plaintiff for exercising Plaintiff's First Amendment right to free speech pursuant to the United States Constitution via § 1983 for reporting issues of public concern to his supervisors and the Defendant City's EEO. Plaintiff asserts therein that Defendant retaliated against Plaintiff, who was subjected to a brutal physical assault, and further victimized by the fabrication of a false disciplinary history, the modification of Plaintiff's work shift, designed to substantially reduce Plaintiff's income, and finally culminating in the retaliatory termination of Plaintiff's employment. (**JA 1**, ECF No. 1).

On April 29, 2022, Defendant filed a motion to dismiss the Complaint. (EFC **JA 2**, EFC No. 8; **JA 10-35**). The Court entered an Order on April 29, 2022, ruling that Plaintiff may file an amended Complaint in lieu of filing a response in opposition to Defendant's Motion to dismiss. (**JA 2**, EFC No. 11). On May 20, 2022, Plaintiff filed an Amended Complaint (herein "AC"). (**JA 3**, EFC No. 16; **JA 36-41**). On May 23, 2022, the Court issued an Order denying Defendant's Motion to dismiss as moot. (**JA 3**, EFC. 17).

On May 31, 2022, Defendant moved to dismiss the Amended Complaint under Rule 12. (**JA 3**, EFC No. 18). The District Court granted Defendant's Motion to dismiss the Amended Complaint on December 19, 2022, and said Judgment was

entered by the Clerk on December 20, 2022. (**JA 3**, EFC. Nos. 25 & 26). The District Court found that the determination by the ALJ as a result of the administrative hearing before OATH did not preclude Plaintiff's First Amendment Retaliation claim. (**JA 287-295**). The purpose of the OATH hearing was to evaluate whether Plaintiff was incompetent or engaged in misconduct, not to determine whether Plaintiff's First Amendment rights were violated. (**JA 289**). The Court determined that Plaintiff's speech regarding "drug dealing, fraud, and theft of PPE" were not issues of public health or safety concerns and that the "[A]mended Complaint fails to allege facts from which the Court can plausibly infer that the misconduct about which he complained created a public health or safety concern." (**JA 293**). Notably, the District Court failed to include in its consideration the intoxication of employees while working at the Sewage Treatment Facility. (*Id.*).

Furthermore, the District Court determined that it could not plausibly infer that that theft of personal protective equipment has an impact on public health or safety, while excluding any analysis of the same for drug dealing, fraudulent signing of chemical delivery documents and intoxicated employees working at the Sewage Treatment Facility:

> Mr. Reynolds claims, in a conclusory way, that the alleged wrongdoing "imped[ed] [his co-workers'] ability to adequately perform their job." Am. Compl. ¶ 9. He does not, however, allege that any co-worker failed to perform specific duties that had an impact on public health or safety. Rather, he alleges only, in a conclusory way, that his coworkers endangered the public's health and safety. Id.

10

¶ 10.   Despite drawing all reasonable inferences in favor of the Plaintiff, the Court cannot determine from Plaintiff's Complaint how, for example, the theft of personal protective equipment has an impact on public health and safety by interfering with the effective treatment of sewage. (**JA 294**).

The District Court also determined:

Moreover, Mr. Reynolds appears to have only complained to his supervisors and to the City Equal Employment Office.  Am. Compl. ¶ 12.  There are no private analogues to individual discussions within a hierarchical chain of employment of a municipal government. (**JA 269** fn.6).

Additionally, the District Court further dismissed Plaintiff's Amended Complaint with prejudice based on it's finding that Plaintiff had amended the Complaint once after Defendant filed the initial Motion to dismiss and that "Plaintiff has given no indication that he has additional facts that he could add that would cure the deficiencies in the Amended Complaint."  (**JA 295**, fn.7).

## QUESTIONS PRESENTED

1.   Whether the District Court Erred in Dismissing Plaintiff's Claim of Unlawful Retaliation for the Violation of the Exercise of Plaintiff's First Amendment Right to Freedom of Speech Brought Pursuant to 42 U.S.C. Section 1983?

**ANSWER:**     In the Affirmative.

2.   Whether the District Court Erred in Holding that Plaintiff's Speech Did Not Involve a Matter of Public Concern?

**ANSWER:**     In the Affirmative.

11

## SUMMARY OF ARGUMENT

The lower Court misapplied the law in its determination that Plaintiff was speaking as an employee and not as a citizen when making its First Amendment analysis. Furthermore, the lower Court erred in its determination that: 1) drug trafficking; 2) working while intoxicated with hazardous chemicals and being responsible for ensuring clean drinking water for the public; 3) fraudulent signing of paperwork for chemical deliveries; 4) theft of person protective equipment; and 5) workplace violence, are not matters of public concern. Plaintiff pled with the necessary amount of particularity to satisfy his claim of First Amendment retaliation. This Court should reverse the lower Court's dismissal and remand the action.

## STANDARD OF REVIEW

"'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' . . . 'When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir., 2010).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

12

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While the plausibility test "asks for more than a sheer possibility that a defendant has acted unlawfully" (*id.*), it "does not impose a probability requirement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The District Court should not resolve competing factual inferences on a Motion to dismiss. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir., 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion. '[F]act-specific question[s] cannot be resolved on the pleadings.' A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible"); *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir., 2020) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"). "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

As Plaintiff challenges the District Court's dismissal under Rule 12(b)(6), the standard of review is *de novo*. *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir., 2015).

## ARGUMENT

## <u>POINT I</u>

**Plaintiff sets forth a *Prima Facie* case for Retaliation for Protected Speech pursuant to the First Amendment of the Constitution of the United States of America**

To establish First Amendment retaliation by a government entity, the plaintiff must demonstrate that "(1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech." *Montero v. City of Yonkers,* 890 F.3d 386, 394 (2d Cir., 2018)(alterations omitted). "The speech of a public employee is protected by the First Amendment when the employee speaks as a citizen on a matter of public concern, rather than pursuant to his employment responsibilities." *Specht v. City of New York*, 15 F.4th 594, 600 (2d Cir., 2021); *citing Garcetti v. Ceballos,* 547 U.S. 410, 420-21, 126 S.Ct. 1951 (2006).

### A. <u>Plaintiff's Speech is Protected by the First Amendment</u>

In analyzing whether an employee makes affirmative speech as a citizen or an employee, the Second Circuit has focused on two questions: "**(A) did the speech fall outside of the employee's official responsibilities, and (B) does a civilian analogue exist?**" *Matthews v. City of New York*, 779 F.3d 167, 173 (2d Cir., 2015) (*Matthews I*) (internal quotation marks and citations omitted)(*Emphasis* added). An

14

employee may be speaking as a citizen even though the speech is made to a

supervisor, relates to her employment, or was spoken in the workplace. *Brown v.*

*Off. of State Comptroller*, 456 F. Supp. 3d 370, 391 (D. Conn., 2020); *citing Ross v.*

*Breslin*, 693 F.3d 300, 307 (2d Cir., 2012). "Courts may consider a speaker's motive

as part of this analysis, although that factor is not dispositive. Likewise, courts may

consider the forum and manner in which an employee makes a statement." *Shara v.*

*Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 84 (2d Cir., 2022); *citing Golodner*,

770 F.3d at 202 (2d Cir., 2014); *Specht*, 15 F.4th at 600; *Agosto v. N.Y.C. Dep't of*

*Educ.*, 982 F.3d 86, 95 (2d Cir., 2020).

The lower Court erroneously found that Plaintiff' statements were made as an

employee rather than as a citizen. (**JA 294**). In fact, the lower Court truncated

paragraph eleven of the Amended Complaint in such a manner that it obscured the

actual meaning of said paragraph:

> The allegations in the Amended Complaint further indicated that
> Mr. Reynolds reported wrongdoing to the DEP as an employee, not
> as a citizen, because these matters were "part-and-parcel of [his]
> concerns about his ability to properly execute his duties."
> *Matthews*, 779 F.3d at 173 (quoting *Weintraub*, 593 F.3d at 203).
> While Plaintiff denies that his reporting fell within the scope of his
> employment, he simultaneously states that his complaints were
> focused on "issues that directly impacted him." Am. Compl. ¶11.
> (**JA 294**).

Whereas, paragraph eleven of the Amended Complaint states:

While Plaintiff did, throughout his employment and after the retaliation

against him commenced, complain about issues that directly impacted

15

him, his complaints regarding the illegalities that were occurring at DEP were not within the scope of his job, and related to community concerns rather than his own personal concerns, as they were specifically targeted to uncover wrongdoing and breaches of public trust that potentially impacted public health.  (**JA 38 ¶ 11**).

Of import, is the fact that Plaintiff's complaints were in regard to matters of public concern, as reflected in paragraph ten of the Amended Complaint:

> Moreover, Reynolds reported, among other things, illegalities occurring at Ward's Island, including **drug dealing**, **fraudulent signing of paperwork concerning chemical deliveries**, and **theft of PPE** supplies. Again, these actions presented a clear potential risk to the health and safety of the public, and reporting these issues was neither within the scop[e] of Plaintiff's job duties, nor did they provide him any personal benefit. Rather, his reporting of the aforementioned conduct created personal harm as he was subjected to harassment and retaliation as a direct result of his speech. (**JA 38¶ 10**)(*Emphasis* added).

In addition, Plaintiff pled that he was an outspoken critic regarding numerous employees, including Michael Parente, consuming alcohol while working on the job site, and continuing to work in a state of intoxication, thereby impeding their ability to adequately perform their job duties, which is an essential function to maintain public health.  (**JA 37 ¶¶ 8-9**).  Similarly, Plaintiff reported being physically assaulted by Mr. Parente based on Plaintiff making complaints.  Notably, prior to his employment with Defendant, Mr. Parente spent six years in prison upstate, after being convicted of manslaughter.  As such, Defendant was fully aware that Mr. Parente had a serious propensity for violence when Plaintiff reported the physical assault.

16

The lower Court failed to show or even discuss how Plaintiff's duties as sewage treatment worker related to his responsibility as an employee to report drug dealing at the sewage treatment plant, which is public property, the fraudulent signing of paperwork for chemicals, physical violence at the workplace or the intoxication of workers at the treatment facility during their shift time. The one paragraph of the decision that the lower Court dedicated to this discussion cited two cases that illustrate how Plaintiff's work was not related to the complaints Plaintiff made.

The lower Court's above reliance on *Weintraub* is erroneous, as the instant matter is easily distinguished. Specifically, the plaintiff in *Weintraub* was a school teacher. The Court found that the plaintiff's grievance related to the discipline of public school children, which constituted speech by an employee. Plaintiff's duty was "as a public school teacher—namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 203 (2d Cir., 2010). The decision in *Matthews* actually supports Plaintiff's position that Plaintiff spoke as a citizen rather than an employee:

> "Matthews' speech to the Precinct's leadership in this case was not what he was "employed to do," unlike the prosecutor's speech in *Garcetti*, nor was it "part-and-parcel" of his regular job, unlike the case of the teacher in *Weintraub* and the payroll clerk in Ross. Matthews's speech addressed a precinct-wide policy. Such policy-oriented speech was

17

neither part of his job description nor part of the practical reality of his everyday work."

*Matthews v. City of New York*, 779 F.3d 167, 174 (2d Cir. 2015).

Plaintiff's employment as a sewage treatment worker included no duty or responsibility for reporting or monitoring drug dealing at the treatment facility, theft of PPE during the pandemic, intoxication of employees, and fraudulent signing of paperwork for chemicals.

Furthermore, the lower Court erroneously contends, and misstates the law, by finding that Plaintiff's reporting of the illegal activities to his supervisors and Defendant EEO failed to meet the civilian analogue requirement:

> Moreover, Mr. Reynolds appears to have only complained to his supervisors and to the City Equal Employment Office. Am. Compl. ¶ 12. There are no private analogues to individual discussions within a hierarchical chain of employment of a municipal government. *See Shara v. Maine-Endwell Central Sch. Dist.*, 46 F.4th 77, 86 (2d Cir. 2022). As was the case in *Shara*, Plaintiff's supervisors and the City Equal Employment Office are not "an independent state agency" that is responsible for entertaining complaints generally from the public. *Id.* at 87. (**JA 294** fn. 6).

The law does not require that Plaintiff make a report to an independent state agency. In *Matthews*, as discussed *supra,* the plaintiff was a police officer who reported his complaints regarding quotas only to the hierarchy within his police department. Because it was not part of the Plaintiff's employment responsibilities to make such reports, his speech was found by the Court to be protected. *Matthews v.*

*City of New York*, 779 F.3d 167, 174 (2d Cir., 2015). "Speech to a supervisor even in the workplace can be protected as that of a private citizen if it is not made pursuant to the employee's official duties as an employee. Courts must focus their inquiry on the nature of the speech itself and its relationship to the plaintiff's job responsibilities." *Ross*, 693 F.3d at 307. *Shara* is inapposite to the instant matter, as the plaintiff in *Shara* was acting as a union official and advocating for the school bus driver union members regarding safety inspections and technical protocols, not as a private citizen regarding bus safety issues. The plaintiff was acting in the role of a union official taking action pursuant to the collective bargaining agreement. *See Shara v. Maine-Endwell Central Sch. Dist.*, 46 F.4th 77, 86 (2d Cir., 2022). The facts in *Shara* do not involve Defendant City's EEO and is not analogous. A union only provides protection and help for its members, whereas according to Defendant EEO's published policies, the EEO's scope is broad and includes non-employees:

> This Policy protects every individual who works for the City of New York and within its workplaces, as well as all **applicants for employment**, from discrimination, harassment, and retaliation. This protection covers, but is not limited to, all employees (supervisory, non-supervisory, managers, executives, senior-level staff, **interns**, whether paid or unpaid, **volunteers**, temporary, seasonal, part time or short term), applicants for employment, **"non-employees" (contractors, subcontractors**, **vendors**, **consultants**, **and those they employ**), and other persons conducting business or providing services in a City workplace, regardless of immigration status.

19

(https://www.nyc.gov/assets/dcas/downloads/pdf/agencies/nyc_eeo_policy.pdf,

p.8 accessed May 17, 2023)(*Emphasis* added). The filing of complaints with

Defendant EEO is not limited to employees, as private individuals can use the EEO

process to initiate complaints.

Furthermore, the record below, which must be taken as a whole, includes

sworn testimony, attached as exhibits to Defendant's Motion to dismiss the

Amended Complaint, that unequivocally shows that Plaintiff called the New York

City Police Department (herein NYPD) regarding the physical assault by Mr.

Parente, who was arrested and charged with assault. (**JA 20**, **87**, Ln:4-16, **255**). As

such, an outside agency, though not required, was informed of at least one instance

of workplace violence.[2]

As such, the lower Court misapplied the law in finding that Plaintiff's speech

was made as an employee rather than as a citizen. This Court must overturn the

lower Court's determination and find that Plaintiff's speech was made as a citizen.

**B. <u>Plaintiff's Speech was a Matter of Public Concern</u>**

The Supreme Court has defined "a matter of public concern" as one that "relat

[es] to any matter of political, social, or other concern to the community." *Sousa v.*

---

[2] Though the lower court states that any further leave to amend the complaint would
be fruitless, the Plaintiff's new counsel has reviewed all files and has copies of
complaints the Plaintiff filed with OSHA regarding health and safety issues prior to
the retaliation and termination.

*Roque*, 578 F.3d 164, 170 (2d Cir., 2009); *quoting Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id*.; *quoting Connick*. at 147–48, 103 S.Ct. 1684.

"Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people,'" *Lane v. Franks*, 573 U.S. 228, 235–36, 134 S. Ct. 2369, 2377, 189 L. Ed. 2d 312 (2014); *quoting Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). "This remains true when speech concerns information related to or learned through public employment. After all, public employees do not renounce their citizenship when they accept employment, and this Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights." *Lane*, 573 U.S. at 235-36. (citations omitted). "There is considerable value, moreover, in encouraging, rather than inhibiting, speech by public employees. For "[g]overnment employees are often in the best position to know what ails the agencies for which they work." *Id*.; *quoting Waters v. Churchill*, 511 U.S. 661, 674, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion). "The interest at stake is as much the public's interest in receiving informed opinion as it is

the employee's own right to disseminate it." *Id*.; *quoting San Diego v. Roe*, 543 U.S. 77, 82, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) (per curiam ).

"In examining whether speech is on a matter of public concern, we consider the motive of the speaker cognizant that 'speech on a purely private matter ... does not pertain to a matter of public concern' and, conversely, that an individual motivated by a personal grievance can simultaneously speak on a matter affecting the public at large." *Golodner v. Berliner*, 770 F.3d 196, 203 (2d Cir. 2014); *quoting Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006); *see also Sousa,* 578 F.3d at 174. "In that vein, we have held that matters implicate the public interest when the plaintiff 'wanted to debate issues of discrimination, that [the plaintiff's] suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that [the plaintiff's] suit was part of an overall effort to correct allegedly unlawful practices or bring them to public attention.'" *Golodner*, 770 F.3d at 203; *quoting Huth v. Haslun*, 598 F.3d 70, 75 (2d Cir., 2010)(internal citation, quotation marks, and ellipses omitted).

Plaintiff worked at a public sewage treatment facility whose purpose is to supply clean drinking water and limit hazardous chemicals and pollutants in the environment. As such, the purpose, goals and mission of Defendant City's sewage treatment facility on Wards Island is exclusively focused on public health and safety. The lower Court's determination that Plaintiff's speech was not a matter of public

concern mirrors the truncated review of the content of the Amended Complaint.  As discussed *supra* in **POINT I A**, Plaintiff's complaints involved: 1) workers imbibing alcohol on-site and working while intoxicated; 2) fraudulent signing of paperwork for chemical deliveries; 3) drug dealing; and 4) theft of PPE supplies.

Firstly, simply the nature of handling hazardous chemicals and ensuring clean drinking water for the City of New York is an issue of public importance.  It is truly bewildering that the lower Court determined that it could not make a reasonable inference as to how intoxicated employees working at Defendant's sewage treatment facility could endanger the public, as those workers were responsible for handling environmentally hazardous chemical and supplying clean drinking water.  For example, toxic chemicals could spill into the drinking water or be incorrectly stored and leach into the ground as a result of worker intoxication.  Heavy equipment could be misused due to inebriation, causing chemicals to ignite an explosion, etc.  There are as many possibilities as there are episodes of the Simpsons.

It is beyond understanding how the dealing of illegal drugs on public property is not an issue of public concern, as local, State and Federal governments have focused on eradicating drug trafficking for decades, especially considering the current uptick reported widely in the news of drug addiction in the United States.  The lower Court fails to consider, or even acknowledge the dangers that drug trafficking brings to communities in terms of crime and gun violence, etc.  There is

absolutely no benefit to Plaintiff for reporting issues of illegal drug dealing to his superiors, and as pled by Plaintiff, was done so solely in the interest and concern for the community and public safety.

The Court has consistently found that governmental misconduct is an important topic of public concern, as this Court found in *Specht v. City of New York*:

> To begin with, possible governmental misconduct is a legitimate and an important topic of public concern. *Lane v. Franks*, 573 U.S. 228, 241, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014) (concluding that testimony concerning "corruption in a public program... obviously involves a matter of significant public concern"); *Singer*, 711 F.3d at 340 (recognizing that "governmental corruption is plainly a potential topic of public concern"); *Jackle*r, 658 F.3d at 236 (reasoning that the "[e]xposure of official misconduct... is generally of great consequence to the public"); *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999) (recognizing that "corruption or public wrongdoing" is almost always a matter of public concern). And although we have heard cases involving widespread misconduct, *see Cotarelo v. Village of Sleepy Hollow Police Dept*, 460 F.3d 247, 252 (2d Cir. 2006), the alleged misconduct need not be systemic or pervasive to touch on a matter of public concern. Indeed, *Jackler* and *Montero* indicate that even isolated instances of official conduct may implicate matters of public concern. *See also Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 46 (2d Cir. 2018) ("A single incident of official misconduct may touch on a matter of public concern[.]").

*Specht*, 15 F.4th, 601; *see Lane v. Franks*, 573 U.S. 228, 134 S. Ct. 2369, 2373, 189 L. Ed. 2d 312 (2014)(holding corruption in a public program and misuse of state funds obviously involve matters of significant public concern).

The fraudulent signing of paperwork for chemical deliveries in the context of Defendant City's sewage treatment facility that is charged with the limitation of

hazardous chemicals and pollutants in the environment raises alarm and an inference of such with ease. The nature of the fraudulent signings, beyond the chemical deliveries themselves, can easily be inferred to involve some kind of financial and/or environmental fraud where, for example, Defendant is receiving chemicals that are mis-labeled and are, therefore, being stored and/or dumped incorrectly, or Defendant's employees are receiving chemicals that are outside Defendant City's Sewage Treatment Facility's jurisdiction for payment.

Similarly, the theft of PPE is theft from Defendant City's budget and particularly, since the timeframe is in 2020, put the public who came in contact with Defendant City's sewage treatment facility employees at a higher risk of contracting COVID. Said employees were all essential workers and, therefore, required to work during the COVID restrictions. PPE was essential as said employees had contact with each other, unlike the majority of the public during that timeframe. A lack of PPE put employees families, friends and other individuals at a higher risk of contracting COVID. Furthermore, working with dangerous chemicals and pollutants in itself requires special PPE, the theft of which could cause chemical burns and severe injuries.

The lower Court erred in its determination that Plaintiff's speech was not a matter of public concern by failing to consider the Amended Complaint in its entirety and its failure to make reasonable inferences from said pleadings. As such, the Court

must reverse the lower Court and find that Plaintiff sufficiently pled his speech was a matter of public concern and remand for further findings.

## CONCLUSION

This Court should vacate the District Court's Order dismissing Plaintiff's First Amendment Retaliation claims and remand for further findings.

Dated: May 22, 2023

Respectfully Submitted,

/s/ Geoffrey T. Mott
The Law Offices of Geoffrey T. Mott, P.C.
By: Geoffrey T. Mott, Esq.
Cathryn Harris-Marchesi
Attorneys for Plaintiffs
7600 Jericho Turnpike, Suite 105
Woodbury, New York 11797
(516) 544-4600

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6,248 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: New York, New York
     May 22, 2023

              /s/ Geoffrey T. Mott
              The Law Offices of Geoffrey T. Mott, P.C.
              By: Geoffrey T. Mott, Esq.
              Cathryn Harris-Marchesi
              Attorneys for Plaintiffs
              7600 Jericho Turnpike, Suite 105
              Woodbury, New York 11797
              (516) 544-4600